UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

GENERAL DRIVERS, WAREHOUSEMEN
AND HELPERS LOCAL UNION NO. 89                                    PLAINTIFF


v.                                      CIVIL ACTION NO. 3:14-CV-00524-CRS


CLARIANT CORPORATION                                              DEFENDANT

### MEMORANDUM OPINION

This matter is before the Court on (1) a motion by Defendant for summary judgment and

a motion by Plaintiff for summary judgment on Plaintiff's claim to compel arbitration, and (2) on

a motion by Defendant for summary judgment and a motion by Plaintiff for summary judgment

on Defendant's counterclaim for breach of a settlement agreement. For the reasons set forth

below, the Court will grant Defendant's motion for summary judgment on Plaintiff's claim to

compel arbitration and deny the remaining motions.

### BACKGROUND

Unless otherwise indicated, the following facts are undisputed. Defendant Clariant

Corporation ("Clariant" or "Company") and Plaintiff General Drivers, Warehousmen and

Helpers Local Union No. 89 ("General Drivers" or "Union") were parties to a collective

bargaining agreement ("CBA") effective until April 30, 2015. Under the CBA, there was a three

step process where the parties would attempt to settle CBA-identified grievances. "In the event

the parties fail to settle [a] grievance in the previous steps, the dissatisfied party must notify the

other … to appeal the decision to arbitration…." CBA 33, ECF No. 1-5.

The Union filed a grievance on behalf of one of its members, Bruce Crosson, on September 17, 2013, relating to the Company's denial of payment of unused vacation benefits upon his retirement. The following day the Union filed an additional grievance on behalf of a similarly situated class of its members concerning the same subject. When the parties could not resolve the issues, the two grievances ("Grievances") were combined for a pending arbitration. Pl.'s Mot. Summ. J. 1-2, ECF No. 28-1.

During pre-arbitration negotiations, James U. Smith, III ("Smith") represented the Company and Robert Colone ("Colone") represented the Union. Colone was also one of the "Assistants to the President" – a title given to Union business representatives. Colone Dep. 4-6, ECF No. 27-2. After the parties, including the Union bargaining committee members, arrived at the scheduled arbitration on April 9, 2014, Colone approached Smith about settling the Grievances. Pl.'s Mot. Summ. J. 8, ECF No. 28-1. The pair broke away from the rest of the group and Colone proposed "paying Bruce Crosson what he would have otherwise been entitled to for his … vacation benefits for 2013 …. And then to address the class grievance, the parties would agree to go to the table in 2015, which would be the next term to negotiate a new Collective Bargaining Agreement." Colone Dep. 17, 20, ECF No. 27-2. Smith returned to the Company representatives to discuss the proposal while Colone spoke with the bargaining committee members about the matter. *Id.* at 20-21.

The two reconvened and Smith told Colone that the Company "in principle … accept[ed] those two terms." *Id.* at 26. Colone and Smith returned to the larger group and "advised the Arbitrator that we [the parties] had reached an agreement." *Id*; Invoice, ECF No. 27-4 ("Parties resolved dispute."); *see also* Smith Dep. 24, ECF No. 28-4 (noting that Colone and Smith "probably both said … we have reached agreement on the resolution … of these grievances.").

According to Colone, at the end of these discussions "there was no confusion" from his "standpoint with the [Union bargaining] Committee on what the terms of th[e] agreement was." Colone Dep. 30, ECF No. 36-1. Colone understood that "Jim [Smith] would draft up an agreement and send it over to [the Union] to be signed." Colone Dep. 27, ECF No. 31-2. After advising the arbitrator, Colone, at the behest of John Bolton, the Union's "Business Agent" for matters involving Clariant, Colone Dep. 11, ECF No. 27-2, told Smith "to make sure that every committeeman's name was listed on the agreement." Colone Dep. 60-61, ECF No. 28-3.

On April 14, 2014, Smith sent Colone an email including an attached "Grievance Settlement Agreement." Colone Apr. 17 Email 2, ECF No. 27-5. Colone replied on April 17, 2014, informing Smith that "I have just met with the union bargaining committee and they do not approve of the settlement agreement as it is written. It appears to include additional terms and restrictive language that was not agreed upon by the parties during our informal settlement discussion." *Id.* at 1. Smith's email stated that the attached agreement contained language limiting potential resolution of the class grievances during negotiations "to a modification of the vacation article within the CBA only" instead of "infinite settlement options." *Id.* Smith also proposed that the parties contact the arbitrator "[i]n light of these recent developments." *Id.*

Smith sent Colone a revised "Grievance Settlement Agreement" on April 29, 2014, "accept[ing] the Union's proposed changes to the Initial draft." Colone Apr. 29 Email 1, ECF No. 27-6; *see also* Smith Dep. 42, ECF No. 27-3. Colone responded that "the entire union negotiating committee has reconsidered its position and no longer wishes to participate in the settlement agreement" and reiterated a request for arbitration. Colone Apr. 29 Email 1, ECF No. 27-6. The Company refused to reschedule an arbitration hearing and alleges the parties reached a settlement agreement concerning the Grievances. The Union alleges the parties failed to reach a

settlement agreement and asks this Court to compel arbitration of the Grievances under the CBA.
The Company counterclaims that the Union breached the settlement agreement.

## STANDARD

Before granting a motion for summary judgment, the Court must find that "there is no
genuine issue of material fact such that the moving party is entitled to judgment as a matter of
law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of
establishing the nonexistence of any issue of material fact, *Celotex Corp. v. Catrett*, 477 U.S.
317, 322 (1986), a burden which may only be satisfied by "citing to particular parts of materials
in the record..." or "showing that the materials cited do not establish the absence or presence of a
genuine dispute." Fed. R. Civ. P. 56(c)(1). If the moving party satisfies this burden, the burden of
production shifts to the non-moving party, who must then identify evidence demonstrating the
existence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 322.

In resolving a motion for summary judgment, the Court must view the evidence in a light
most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, the
non-moving party "must do more than simply show that there is some metaphysical doubt as to
the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).
The non-moving party cannot rely upon the assertions in its pleadings; rather, that party must
provide probative evidence, such as sworn affidavits, to support its claims. *Celotex*, 477 U.S. at
324. It must present specific facts showing that a genuine factual issue exists by "citing to
particular parts of materials in the record" or by "showing that the materials cited do not
establish the absence ... of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1)."The mere existence of
a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there
must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). If the non-moving party fails to satisfy its

burden of counterproduction, the court must grant the motion for summary judgment.

When both parties move for summary judgment, this Court "must evaluate each motion

on its merits and view all facts and inference in the light most favorable to the nonmoving party."

*Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003).

## DISCUSSION

Both parties have moved for summary judgment on Plaintiff's claim to compel arbitration

and Defendant's counterclaim for breach of a settlement agreement. The Court will assess each

claim in turn.

## 1. Cross-Motions for Summary Judgment on the Plaintiff's Claim to Compel Arbitration

Both General Drivers and Clariant seek summary judgment on the claim to compel

arbitration asserted against Clariant. Under the National Labor Relations Act ("NLRA"), "[s]uits

for violation of contracts between an employer and a labor organization representing employees

… may be brought in any district court of the United States having jurisdiction of the parties." 29

U.S.C. § 185(a). Parties may agree, however, to arbitrate these disputes instead of bringing

grievances to a district court. Four principles govern whether a party is bound to arbitrate a

dispute:

> 1) a party cannot be forced to arbitrate any dispute that it has not obligated itself
> by contract to submit to arbitration; 2) unless the parties clearly and unmistakably
> provide otherwise, whether a collective bargaining agreement creates a duty for
> the parties to arbitrate a particular grievance is an issue for judicial determination;
> 3) in making this determination, a court is not to consider the merits of the
> underlying claim; and 4) where the agreement contains an arbitration clause, the
> court should apply a presumption of arbitrability, resolve any doubts in favor of
> arbitration, and should not deny an order to arbitrate unless it may be said with
> positive assurance that the arbitration clause is not susceptible of an interpretation
> that covers the asserted dispute.

*International Union v. Cummins, Inc.*, 434 F.3d 478, 485 (6th Cir. 2006) (summarizing *AT & T Technologies, Inc. v. Commc'ns Workers,* 475 U.S. 643, 651 (1986)).

The CBA between the Company and the Union included a three-step grievance process for settling disputes between the company and any employee. CBA 32-33, ECF No. 1-5. "In the event the parties fail to settle the grievance in the previous steps, the dissatisfied party must notify the other [party] … to appeal the decision to arbitration." *Id.* at 33. The CBA only required arbitration for those disputes not settled through the grievance procedure. Even with a presumption of arbitrability, the parties did not obligate themselves to submit to arbitration grievances already subject to a settlement. The parties, however, did obligate themselves to submit unsettled grievances arising under the CBA to arbitration. Hence, when viewing the facts most favorable to the non-movant on each particular motion, whether a settlement agreement exists will be dispositive of the cross-motions for summary judgment on the claim to compel arbitration of the Grievances against the Company.

Section 301 of the NLRA governs the formation of contracts – such as CBAs – between labor organizations and employers. *See* 29 U.S.C. § 185. CBAs include settlement agreements between parties to the collective bargaining relationship. *See Inlandboatmens Union of Pac. v. Dutra Grp.*, 279 F.3d 1075, 1079 (9th Cir. 2002). Whether a settlement agreement exists under a CBA is a fact intensive question where "technical rules of contract law are not strictly binding." *Bobbie Brooks, Inc. v. Int'l Ladies' Garment Workers Union*, 835 F.2d 1164, 1168 (6th Cir. 1987) (citations omitted). While "[a] meeting of the minds of the parties must occur," the "existence of a collective bargaining agreement does not depend on its reduction in writing; it can be shown by conduct manifesting an intention to abide by agreed-upon terms." *Id.* The parties may even "form a binding agreement which they intend to be final, despite leaving

certain terms open for future negotiation." *Id.* Under the NLRA, labor organizations and employers defined by the Act are "bound by the acts of [their] agents." 29 U.S.C.A. § 185(b). For the purposes of determining agency under Section 185 of the Act, whether "specific acts performed were actually authorized or subsequently ratified shall not be controlling." *Id.* at § 185(e).

Viewing the facts most favorable to the Union, Robert Colone had apparent authority to enter into a settlement agreement with the Company and did enter into such an agreement on the Union's behalf. Colone was General Drivers' General Counsel and held the title of "Assistant to the President." Colone Dep. 4-6, ECF No. 27-2. The Union designated Colone to lead "negotiations for any sort of pre-hearing settlement" concerning the Grievances. *Id.* at 10-11; Bolton Dep. 67, ECF No. 27-7. During pre-hearing discussions with Smith, Clariant's representative, Colone twice conferred with union bargaining committee members before both Colone and Smith advised the arbitrator that the sides had come to an agreement and to cancel the arbitration. Colone Dep. 29, ECF No. 36-1; Invoice, ECF No. 27-4. On the available evidence construed in favor of the Union, there are no supported allegations that Colone lacked apparent authority to enter into a settlement agreement on behalf of General Drivers or evidence supporting the contention that Defendant knew Colone lacked authority to enter into a binding agreement.

While the Union alleges that the Company's inclusion of signature blocks for committee members in the draft agreement shows the Company knew any agreement was subject to member confirmation, the Union does not dispute that it requested the signature block inclusion after the pre-arbitration discussion and informing the arbitrator the parties reached an agreement. Colone Dep. 27, ECF No. 36-1. Even viewing this request as requiring committee confirmation

7

of any agreement, there would be no impact to Colone's authority to enter into a settlement agreement before that point. It is no defense that a labor organization's agent lacked actual authority in contesting the agent's authority to bind the union under Section 185 of the NLRA. Apparent authority, as here, is sufficient to bind the Union to its agent's agreements.

The undisputed evidence confirms Colone, acting with apparent authority to bind the Union, entered into a binding oral settlement agreement with the Company. Colone approached Smith to discuss a possible settlement of the Grievances and presented to Smith the essential terms of the agreement: The individual grievant "would receive vacation pay for 2013 to resolve his grievance, and that the parties would convene negotiations on the issue that was present … in the class grievance, during 2015 negotiations if not sooner than that." Colone Dep. 22, ECF No. 31-2. Smith discussed these terms with Company representatives while Colone conferred with union bargaining committee members. After the pair reconvened, Smith assured Colone that the "he thought [Smith and Colone] could get those terms done from the Company if [they] could get those terms from the Union." Colone Dep. 22, ECF No. 27-2. Following this conversation, Colone returned to the union bargaining committee to inform them that the parties "essentially got a deal." *Id.* Colone and Smith then informed the arbitrator the sides reached an agreement and no longer required an arbitration hearing. Colone Dep. 26, ECF No. 36-1. The arbitrator's invoice confirms this understanding, stating that the "Parties resolved [the] dispute." Invoice, ECF No. 27-4. As to the two essential terms, both Colone and Smith confirmed there was "[n]o confusion" between the parties. Colone Dep. 30, ECF No. 36-1; Smith Dep. 24, ECF No. 28-4.

Later efforts to memorialize the settlement agreement support the conclusion that the material terms of the agreement were undisputed. While the Union later disputed parameters attached to the scope of subsequent bargaining concerning the class grievances, the Company

acknowledged its inclusion of "restrictive language" in the draft and removed it from the written agreement. Colone Apr. 17 Email 1, ECF No. 27-5; Colone Apr. 29 Email 1, ECF No. 27-6; Smith Dep. 42, ECF No. 27-3. Further, Plaintiff contends the amount and rate paid to the individual grievant was not discussed. Pl.'s Mot. Summ. J. 9, ECF No. 28-1. Leaving this undiscussed, however, does not impact the validity of the material terms of the agreement. Colone acknowledged he "kn[e]w that [Crosson] would be compensated for whatever he was entitled to." Colone Dep. 51, ECF No. 35-7.

Finally, the Union's claim that acceptance of the agreement was conditioned on committee approval is unsupportable on the basis of the evidence, even viewed most favorably to the Union. It is undisputed that the signature block for the committee members' names was not requested until after the representatives agreed to the essential terms of the agreement and informed the arbitrator that the matter had been settled. The most generous interpretation of the evidence is that this constituted a request after the parties entered into a binding oral agreement.

As Colone did have apparent authority to enter into a settlement agreement on behalf of the Union and did enter into such an agreement when considering the undisputed facts in favor of Plaintiff, the Grievances are settled. The CBA does not require arbitration unless the parties "fail to settle the grievance in the previous steps" outlined in the CBA. CBA 33, ECF No. 1-5. The Union has failed to show any genuine issue of material fact as to the arbitrability of the Grievances. The Court will grant Defendant's motion for summary judgment as a matter of law and will deny Plaintiff's motion for summary judgment as a matter of law to the extent the motions pertain to Plaintiff's claim to compel arbitration.

**2. Cross-Motions for Summary Judgment on the Defendant's Claim for Breach of a Settlement Agreement**

Both General Drivers and Clariant seek summary judgment on Clariant's counterclaim for breach of a settlement agreement. The parties have alleged insufficient evidence to warrant judgment as a matter of law concerning the counterclaim.[1] The Court will deny Plaintiff's and Defendant's motions for summary judgment to the extent that the motions pertain to the Defendant's counterclaim for breach of a settlement agreement.

A separate order will be entered in accordance with this opinion.

September 14, 2015

**Charles R. Simpson III, Senior Judge**
**United States District Court**

---

[1] If the parties had provided sufficient evidence supporting their initial burdens, this Court would have applied the "scope" test to determine if there was a genuine issue of material fact as to whether the alleged breach of the settlement agreement is arbitrable. The Sixth Circuit articulated this standard in *United Steelworkers of Am. v. Cooper Tire & Rubber Co.*, stating that "unless the parties indicate otherwise, disputes over a side agreement are arbitrable if the subject matter of the side agreement is within the scope of the CBA's arbitration clause." 474 F.3d 271, 278-79 (6th Cir. 2007) (citations omitted).